IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LAMONT JAMES WILLIAMS,<br>AIS # 308250,<br><br>Petitioner,<br><br>v.<br><br>JOHN CROW and<br>STEVEN T. MARSHALL,<br><br>Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 2:26-CV-597-WKW<br>[WO] |

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

Petitioner Lamont James Williams, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. # 1.) Petitioner challenges his 2016 murder conviction and the resulting 30-year sentence imposed by the Circuit Court of Montgomery County, Alabama. *See State v. Williams*, CC-2016-000734.00 (Montgomery Cnty. Cir. Ct.). As ordered (Doc. # 6), Respondents John Crow, the warden of Elmore Correctional Facility, and Steven T. Marshall, the Attorney General for the State of Alabama, filed an Answer to the petition, along with records of Petitioner's state-court proceedings. (Doc. # 14.) Petitioner filed a reply. (Doc. # 16.)

Based upon a review of the parties' submissions, an evidentiary hearing is not warranted. *See* Rule 8, *Rules Governing Section 2254 Cases in the United States District Courts*. For the reasons set forth below, Petitioner is not entitled to relief because his petition is time-barred under 28 U.S.C. § 2244(d)(1)(A). Therefore, the petition will be dismissed with prejudice. Furthermore, Petitioner will be denied a certificate of appealability.

## II. SUBJECT MATTER JURISDICTION AND VENUE

Under 28 U.S.C. § 2254(a), federal district courts have the authority to consider an application for a writ of habeas corpus on behalf of an individual in state custody pursuant to a state-court judgment but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." This provision limits authority, rather than conferring it, with habeas jurisdiction established by 28 U.S.C. § 2241. *See Thomas v. Crosby*, 371 F.3d 782, 787 (11th Cir. 2004). Under § 2241, federal district courts have the power to grant writs of habeas corpus "within their respective jurisdictions," § 2241(a), when a state-convicted prisoner "is in custody in violation of the Constitution, " § 2241(c)(3). The "in-custody" requirement mandates "that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989) (per curiam). Furthermore, § 2241(d), referred to as a "venue provision," "gives the petitioner 'the option of

seeking habeas corpus either in the district where he is confined or the district where the sentencing court is located.'" *Dobard v. Johnson*, 749 F.2d 1503, 1509–10 (11th Cir. 1985) (Clark, J., dissenting) (citation omitted).

Petitioner was in custody under a state-court judgment when he filed this petition. Additionally, at the time of filing, Petitioner was incarcerated in a state prison located in the Middle District of Alabama under conviction and sentence of a state court in this district. Accordingly, this court has subject matter jurisdiction to consider his petition, and venue is proper.

## III. BACKGROUND

### A. State Court Trial Proceedings and Direct Appeal

In June 2016, Petitioner was indicted for murder. (Doc. # 14-1.) Following a trial, the jury returned a guilty verdict on November 30, 2016. (Doc. # 14-3.) On March 9, 2017, Petitioner was sentenced to a 30-year term of imprisonment. (Doc. # 14-4.) Petitioner timely appealed to the Alabama Court of Criminal Appeals (ACCA), claiming that (1) the trial court erred in denying his motion for a continuance to secure a witness, and (2) the trial judge violated Rule 2(B) of the Alabama Canons of Judicial Ethics.[1] (Doc. # 14-19.) The State argued that both of Petitioner's claims were without merit. (Doc. # 14-20.) The ACCA affirmed

[1] Canon 2(B) states, in relevant part, that "[a] judge should at all times maintain the decorum and temperance befitting his office."

Petitioner's conviction and sentence in an unpublished memorandum decision dated September 1, 2017. (Doc. # 14-21.) Petitioner filed an application for rehearing (Doc. # 14-22), which the ACCA overruled (Doc. # 14-23). Petitioner did not seek certiorari review in the Alabama Supreme Court, and the ACCA issued a certificate of judgment on November 1, 2017. (Doc. # 14-24.)

## B. Post-Conviction Proceedings Pursuant to Rule 32 of the Alabama Rules of Criminal Procedure

### 1. *First Rule 32 Petition*

On August 24, 2018,[2] Petitioner filed a *pro se* Petition for Relief from Conviction or Sentence pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. (*See* Doc. # 14-26 at 11–18.) Petitioner asserted seven claims:

1. his conviction was "obtained by a violation of the priviledge [sic] against self-incrimination";

2. the prosecution failed to disclose favorable information;

3. the grand and petit juries were selected or impaneled in an unconstitutional manner;

4. his trial counsel, John Wiley Hartley, Esq., rendered ineffective assistance of counsel;

[2] "Alabama courts have held that a *pro se* incarcerated petitioner/appellant is considered to have 'filed' a Rule 32 petition, a notice of appeal, or a petition for a writ of certiorari when those documents are given to prison officials for mailing." *Ex parte Allen*, 825 So. 2d 271, 272 (Ala. 2002). However, when a petitioner "fail[s] to respond to question 18 on the standardized [Rule 32] petition form, which asks 'What date is this petition being mailed?'" he is "deprived of the benefits of the 'prison mailbox rule.'" *Beamon v. State*, 204 So. 3d 1, 2 n.2 (Ala. Crim. App. 2014). Although Petitioner dated his Rule 32 petition "8-14-2018" (*see* Doc. # 14-26 at 18), he left question 18 blank (*see* Doc. # 14-26 at 17).

5. his appellate counsel, Virgil Ford, Esq., rendered ineffective assistance of counsel;

6. his conviction was "obtained by Judicial violations of [his] constitutional rights"; and

7. his conviction was "obtained by prosecutorial violations of his constitutional rights."

(Doc. # 14-26 at 22–23; Doc. # 14 ¶ 4.) The circuit court initially dismissed the petition. (Doc. # 14-26 at 21.) However, the circuit court vacated the dismissal and ordered the State to respond after receiving Petitioner's "asserted grounds, issues, and brief to support Rule 32." (Doc. # 14-27 at 47.) The State filed its response on October 26, 2018. (Doc. # 14-28 at 16–28.) In a final order dated March 13, 2019, the circuit court denied Petitioner's Rule 32 petition. (Doc. # 14-31 at 30–31.)

Petitioner appealed to the ACCA. (Doc. # 14-31 at 43.) In his brief on appeal, Petitioner argued that (1) the "trial court abused its discretion and furthered a continuing blatant violation of [his] due process rights as [he] was never arrested nor arraigned," and (2) the "trial court abused its discretion in failing to assure fundamentally fair proceeding[s,] which amounted to plain error for furthering continue[d] violations of clearly established an[d] accepted rights." (Doc. # 14-33 at 6.) In an unpublished memorandum decision dated December 20, 2019, the ACCA affirmed the circuit court's denial of Petitioner's Rule 32 petition. (Doc. # 14-36.) Petitioner twice requested additional time to file an application for rehearing, and the ACCA granted both requests. (Docs. # 14-37, 14-38.) Petitioner

never filed an application for rehearing, and the ACCA entered its certificate of judgment on February 7, 2020. (Doc. # 14-39.)

**2. *Second Rule 32 Petition***

While Petitioner's appeal from the denial of his first Rule 32 petition was pending, he filed a second Rule 32 petition on October 23, 2019.[3] (*See* Doc. # 14-40 at 7–29.) Petitioner alleged ineffective assistance of trial counsel due to counsel's failure to review video evidence and investigate to adequately prepare for trial. He also alleged that "newly discovered evidence" mandated that his conviction be vacated. (Doc. # 14-40 at 16–25.) On November 8, 2019, the circuit court dismissed Petitioner's second Rule 32 petition. (Doc. # 14-40 at 44–45.)

Petitioner appealed to the ACCA. (Doc. # 14-40 at 50.) He then moved to dismiss the appeal. (Doc. # 14-41.) On February 28, 2020, the ACCA issued an order dismissing his appeal and setting aside the circuit court's order dismissing his petition. (Doc. # 14-42.) On March 23, 2020, the circuit court entered an order denying Petitioner's second Rule 32 petition. *State v. Williams*, CC-2016-000734.61 (Montgomery Cnty. Cir. Ct.), ECF No. 28. However, that dismissal order was entered before the circuit judge ruled on Petitioner's request to proceed *in forma pauperis*. On or about July 1, 2022, Petitioner filed a motion to vacate the circuit

---

[3] Because Petitioner did not answer question 18 on the standardized Rule 32 form (*see* Doc. # 14-40 at 13), he does not benefit from the prison mailbox rule. *See supra* note 2.

court's order dated March 23, 2020. *Id.*, ECF No. 35. That same date, he also petitioned the ACCA for mandamus relief from the circuit court's March 23, 2020 order. (Doc. # 44.) On July 12, 2022, the circuit court issued an order vacating the March 23, 2020 order and granting Petitioner's *in forma pauperis* motion. *Williams*, CC-16-734.61, ECF No. 39. Petitioner's mandamus petition was denied by the ACCA in December 2022 based on the circuit court's July 12, 2022 order. (Doc. # 14-45.)

Back in the circuit court, the State answered and moved to dismiss Petitioner's second Rule 32 petition. *Williams*, CC-16-734.61, ECF No. 44. By final order dated August 26, 2022, the circuit court granted the State's motion to dismiss and denied the petition. *Id.*, ECF No. 46. Petitioner filed a notice of appeal dated October 11, 2022. *Id.*, ECF No. 54. On October 28, 2022, the ACCA ordered Petitioner to show cause why the appeal should not be dismissed as untimely. (Doc. # 14-46.) On December 15, 2022, the appeal was dismissed as untimely (Doc. # 14-47), and the ACCA entered its certificate of judgment (Doc. # 14-48).

### 3. *Additional Rule 32 Proceedings*

On April 22, 2022,[4] Petitioner filed a third Rule 32 petition. *State v. Williams*, CC-2016-000734.62 (Montgomery Cnty. Cir. Ct.), ECF No. 1. This petition was

---

[4] When asked what date the Rule 32 petition was being mailed, Petitioner responded, "April 22, 2022." *See State v. Williams*, CC-2016-000734.62 (Montgomery Cnty. Cir. Ct.), ECF No. 1 at 18. Therefore, the petition is deemed filed on that date. *See supra* note 2.

denied as successive on May 1, 2022. *Id.*, ECF No. 3. Subsequently, the circuit court vacated the dismissal order because the Rule 32 petition had not been supported by the filing fee or a request to proceed *in forma pauperis* as required by Rule 32.6 of the Alabama Rules of Criminal Procedure. *Id.*, ECF No. 7. Petitioner failed to submit the filing fee or request to proceed *in forma pauperis*, and his case was dismissed on August 9, 2022. *Id.*, ECF No. 13.

On April 19, 2023,[5] Petitioner filed a fourth Rule 32 petition. *State v. Williams*, CC-2016-000734.63 (Montgomery Cnty. Cir. Ct.), ECF No. 1. On April 25, 2023, Petitioner's *in forma pauperis* request was denied, *id.*, ECF No. 3, and on August 16, 2023, his Rule 32 petition was denied, *id.*, ECF No. 5. Petitioner filed a motion to reconsider, *id.*, ECF No. 7, which the circuit court denied, *id.*, ECF No. 9. Petitioner then filed a notice of appeal to the ACCA, *id.*, ECF No. 11, which he later amended, *id.*, ECF No. 13. The ACCA dismissed Petitioner's appeal and entered a certificate of judgment on November 17, 2023. *Id.*, ECF No. 17.

In September or October 2023, Petitioner filed a state-court Petition for a Writ of Habeas Corpus pursuant to Alabama Code §§ 15-21-4 and 15-21-6. The state habeas petition was docketed as Petitioner's fifth Rule 32 petition. *State v. Williams*, CC-2016-000734.64 (Montgomery Cnty. Cir. Ct.), ECF No. 1. On January 11,

[5] Because Petitioner did not answer question 18 on the standardized Rule 32 form, *see State v. Williams*, CC-2016-000734.63 (Montgomery Cnty. Cir. Ct.), ECF No. 1 at 6, he does not benefit from the prison mailbox rule. *See supra* note 2.

2024, his fifth Rule 32 petition was dismissed for failure to pay the requisite filing fee. *Id.*, ECF No. 5.

Over a year later, on March 21, 2025,[6] Petitioner filed a sixth Rule 32 petition. *State v. Williams*, CC-2016-000734.65 (Montgomery Cnty. Cir. Ct.), ECF No. 1. On April 1, 2025, the State answered the petition. *Id.*, ECF No. 3. On that same date, the circuit court denied the petition, classifying the petition as successive and the claims therein procedurally barred, and enjoined Petitioner from filing any additional Rule 32 petitions without obtaining the court's leave. *Id.*, ECF No. 6. Petitioner appealed to the ACCA. *Id.*, ECF No. 10. In an unpublished memorandum decision dated December 12, 2025, the ACCA affirmed the circuit court's dismissal of Petitioner's sixth Rule 32 petition as successive. (Doc. # 14-56.) Petitioner filed an application for rehearing, which the ACCA denied on January 16, 2026. *Williams*, CC-16-734.65, ECF No. 17. On March 13, 2026, the ACCA issued its certificate of judgment. *Id.*, ECF No. 18.

## C. **Miscellaneous Mandamus Proceedings**

In October 2017, Petitioner filed a petition for a writ of mandamus, requesting that the ACCA direct the trial court to set aside its February 17, 2017 order denying his motion to obtain audio recordings of his trial. (*See* Doc. # 14-25.) By order

[6] Because Petitioner did not answer question 18 on the standardized Rule 32 form, *see State v. Williams*, CC-2016-000734.65 (Montgomery Cnty. Cir. Ct.), ECF No. 1 at 6, he does not benefit from the prison mailbox rule. *See supra* note 2.

dated January 29, 2018, the ACCA dismissed Petitioner's mandamus petition as untimely filed. (Doc. # 14-25.)

On or about July 22, 2022, Petitioner filed a mandamus petition with the ACCA, requesting "specific numerated documents" from the Montgomery County Circuit Clerk. (Doc. # 14-49.) On February 10, 2023, the ACCA transferred the mandamus petition to the Montgomery County Circuit Court. (Doc. # 14-51.) On or about August 9, 2023, Petitioner filed another mandamus petition, this time with the Alabama Supreme Court, contending that the circuit court was "flagrantly and arbitrarily refusing to comply with the mandated order of the [ACCA]." (Doc. # 14-50 at 3.) The Alabama Supreme Court denied the mandamus petition on October 6, 2023. (Doc. # 14-52.)

At some point, Petitioner also filed a self-styled "Supplemental Motion for Enforcement Order," which the ACCA construed as another mandamus petition. (Doc. # 14-53 at 1 n.1.) Petitioner's arguments presumably were similar to those raised in his mandamus petition before the Alabama Supreme Court. In its January 10, 2025 order denying the construed mandamus petition, the ACCA noted that Petitioner had erroneously asserted that the ACCA "directed the Montgomery Circuit Clerk to produce some documents in response to an early petition," when the February 2023 order "merely transferred the petition to the Presiding Judge of the Montgomery Circuit Court." (Doc. # 14-53.)

**D. <u>The Instant Petition for a Writ of Habeas Corpus, Respondent's Answer, and Petitioner's Reply</u>**

On July 10, 2026,[7] Petitioner filed the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. # 1.) Petitioner argues that he entered into a negotiated plea agreement to the lesser-included offense of manslaughter but subsequently was unlawfully tried for murder, in violation of his double jeopardy and due process rights.[8] (Doc. # 1 at 1–5.)

On September 14, 2026, Respondents filed an Answer and exhibits. (Doc. # 14.) Respondents primarily argue that the instant petition is untimely. (Doc. # 14 at 8–14.) Alternatively, Respondents argue that Petitioner's claims are procedurally defaulted. (Doc. # 14 at 14–18.)

As ordered (Doc. # 14), Petitioner filed a reply (Doc. # 16). In his reply, Petitioner makes five arguments. First, he claims that "the undisputed record, together with [his] sworn account, shows an accepted and sentenced guilty plea, not

[7] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). Absent evidence to the contrary, the court "assume[s] that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014) (per curiam). Petitioner signed his petition under penalty of perjury and dated it "the 10th day of July, 2026." (*See* Doc. # 1 at 8.) Therefore, even though his habeas petition was not received and docketed by the court until July 22, 2026, the petition is deemed filed on July 10, 2026.

[8] Respondents construed Petitioner's § 2254 petition as asserting a claim for ineffective assistance of counsel based on his counsel's failure to object to the jury trial. (Doc. # 14 ¶ 11.) However, Petitioner appears to raise this "claim" in an unsuccessful attempt to show cause and prejudice to overcome procedural default of his double jeopardy claim. (*See* Doc. # 1 at 6.) For that reason, and because the petition is untimely, it will not be analyzed as a stand-alone claim.

merely a clerical entry." (Doc. # 16 at 5–6.) Second, he avers that jeopardy attached when the trial court accepted the plea and pronounced sentence and that resuming his trial for murder violated the double jeopardy clause. (Doc. # 16 at 7–9.) Third, he asserts that the ACCA's ruling that his double jeopardy claim is not jurisdictional does not bar this court's review. (Doc. # 16 at 9–10.) Fourth, he states that any procedural default is excused by cause and prejudice. (Doc. # 16 at 10–11.) Fifth, he claims his federal habeas petition is timely or, alternatively, the limitation period should be equitably tolled. (Doc. # 16 at 11–13.) He also presses the court to order production of the state-court record and to hold an evidentiary hearing. (Doc. # 16 at 14–15.)

## IV. DISCUSSION

### A. <u>The AEDPA's Statute of Limitations</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Section 2244(d)(1)(A) is relevant here. That is, the one-year limitation period begins when the state-court judgment is considered final, as defined by the AEDPA. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). The AEDPA specifies two alternative dates on which a state-court judgment becomes final: (1) at the "conclusion of direct review" or (2) upon the "expiration of the time for seeking such review." § 2244(d)(1)(A).

In his reply, Petitioner tries to argue that the limitation period began to run pursuant to § 2244(d)(1)(D). (Doc. # 16 at 11–12.) He contends that the factual predicate of the sole claim he now brings in his federal habeas petition—that he pleaded guilty to manslaughter but was subsequently tried for murder in violation of his double jeopardy rights—could not have been discovered or raised in state-court postconviction proceedings until his sixth Rule 32 petition. Contrary to Petitioner's assertion that "[t]he factual predicate of this claim is not merely that a plea was entered," the "fact" that a plea supposedly was entered absolutely constitutes the factual predicate for Petitioner's claim here. Petitioner, however, contends that he could not have known this "fact" until years later, when he finally saw the circuit

court's case action summary and realized that the state court was "treat[ing] [its] own case action summary, and the underlying accepted plea and sentence it recorded, as void and of no effect." As Petitioner himself said, he "knew" a plea had been entered "the moment it happened." (Doc. # 16 at 12.) If, as Petitioner claims, the State went on to try him for murder following this purported plea, the factual predicate underlying his claim could (and should) have been discovered the moment the trial commenced. Therefore, Petitioner's arguments that § 2244(d)(1)(D) would provide a later start date for the limitation period than § 2244(d)(1)(A) are unavailing.

In *Gonzalez*, the Supreme Court established that § 2244(d)(1)(A)'s text "consists of two prongs" with distinct applications:

> For petitioners who pursue direct review all the way to th[e United States Supreme] Court, the judgment becomes final at the "conclusion of direct review"—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in this Court, or in state court, expires.

565 U.S. at 150.[9] Petitioner falls within the second category of *Gonzalez* petitioners—those whose judgment of conviction "becomes final at the 'expiration

[9] The issue in *Gonzalez* centered on identifying when a judgment becomes final under § 2244(d)(1)(A) if a state petitioner forgoes review in a state's highest court. 565 U.S. at 150. There, the state petitioner pursued a direct appeal to the intermediate state appellate court but did not seek discretionary review in the state's highest court. *See id.* at 138. The Supreme Court held that the judgment became final under § 2244(d)(1)(A) when the time for seeking discretionary review in the state's highest court expired under the state court's filing deadlines. *See id.* at 150

of the time for seeking such review' . . . in state court." *Id.* (quoting § 2244(d)(1)(A)).

After the Montgomery County Circuit Court imposed a 30-year term of imprisonment on March 9, 2017, Petitioner timely filed a direct appeal. (Doc. # 14-19.) On September 1, 2017, the ACCA affirmed Petitioner's conviction and sentence in an unpublished memorandum decision. (Doc. # 14-21.) Petitioner filed an application for rehearing (Doc. # 14-22), which the ACCA overruled on October 13, 2017 (Doc. # 14-23). Starting on October 16, 2017,[10] Petitioner had 14 days to file a petition for a writ of certiorari with the Alabama Supreme Court. *See* Ala. R. App. P. 39(c)(2). He did not, and the 14-day deadline for him to seek certiorari review expired on October 30, 2017. Therefore, Petitioner's judgment of conviction became final on October 31, 2017, and the one-year limitation period under

("We . . . agree with the Court of Appeals that because [the petitioner] did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired.").

[10] Under Rule 26 of the Alabama Rules of Appellate Procedure, "[i]n computing any period of time prescribed by these rules, by an order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included." Ala. R. App. P. 26(a). The ACCA overruled Petitioner's application for rehearing on Friday, October 13, 2017. (Doc. # 14-23.) Therefore, the computation of the 14-day deadline for Petitioner to file a certiorari petition with the Alabama Supreme Court began the following Monday—October 16, 2017.

§ 2244(d)(1)(A) began to run the next day[11]—November 1, 2017.[12] *See Green v. Sec'y, Dep't of Corr.*, 877 F.3d 1244, 1247 n.3 (11th Cir. 2017) ("The limitation period [under § 2244(d)(1)(A)] began to run the day after the conviction and sentence became final . . . ."); *San Martin v. McNeil*, 633 F.3d 1257, 1266 (11th Cir. 2011) (holding that Federal Rule of Civil Procedure 6(a)(1) applies to the calculation of the AEDPA's one-year limitation period and explaining that the limitation period therefore begins to run from the day after the day of the event that triggers the period).

The one-year limitation period was set to expire on November 1, 2018. *See Downs v. Mitchell*, 520 F.3d 1311, 1318 (11th Cir. 2008) (noting that § 2244(d)(1)'s limitation period "expires on the anniversary of the date it began to run"). Absent any tolling of the limitation period as outlined below in Part IV.B, the instant federal

---

[11] Although Petitioner had filed a petition for a writ of mandamus with the ACCA, and that mandamus petition was pending as of November 1, 2017 (*see* Doc. # 14-25), the Eleventh Circuit has not decided whether a properly filed state mandamus petition can toll the AEDPA limitation period. *See Brown v. Barrow*, 512 F.3d 1304, 1307–08 n.2 (11th Cir. 2008) (noting that "a *properly filed* state mandamus petition would probably toll the limitations period" but declining to address the issue (emphasis added)). Regardless, the ACCA denied Petitioner's mandamus petition as untimely (Doc. # 14-25) and, thus, it was not properly filed.

[12] Respondents started the one-year clock based on the date the ACCA issued its certificate of judgment rather than the date of the ACCA decision dismissing Petitioner's direct appeal. (*See* Doc. # 14 ¶ 15 (starting the clock on November 2, 2017, the day after the ACCA issued its certificate of judgment).) *But see, e.g.*, *Kutschenreuter v. McClain*, 2022 WL 738735, at *2 (N.D. Ala. Mar. 11, 2022) ("Because [the petitioner's] time for seeking direct review by filing a petition for a writ of certiorari in the Alabama Supreme Court expired on July 17, 2014, *see* Ala. R. App. P. 39(c), 40(c), her federal habeas time began to run on July 18, 2014, *not on July 23, 2014 when the [ACCA] issued the Certificate of Judgment*." (emphasis added) (citing *Gonzalez*, 565 U.S. at 137)).

habeas petition filed in July 2026—more than seven and a half years after the limitation period expired—is clearly untimely.

## B. Statutory Tolling, Equitable Tolling, and Actual Innocence

An otherwise untimely petition under 28 U.S.C. § 2254 may be considered only if the petitioner demonstrates either entitlement to tolling or a fundamental miscarriage of justice. As set forth below, the one-year limitation period was statutorily tolled during the pendency of Petitioner's first and second Rule 32 petitions but was not tolled while any of his other Rule 32 petitions were pending or during any of his mandamus proceedings. Although Petitioner argues that he is entitled to equitable tolling, that argument fails, and he has not alleged that a fundamental miscarriage of justice occurred.

### 1. *Statutory Tolling*

The AEDPA's one-year limitation period is statutorily tolled during the pendency of "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. § 2244(d)(2). As discussed below, Petitioner's first two Rule 32 petitions afford him some tolling; his subsequent four Rule 32 petitions and his mandamus proceedings afford no tolling; and the resulting statutory tolling is insufficient to render this federal habeas petition timely.

On August 24, 2018—69 days before the one-year limitation period was set to expire—Petitioner filed his first Rule 32 petition. (*See* Doc. # 14-26 at 11–18.) The petition was denied on March 13, 2019. (Doc. # 14-31 at 43.) On December 20, 2019, the ACCA affirmed the circuit court's denial of Petitioner's first Rule 32 petition. (Doc. # 14-36.) Petitioner asked for two extensions of the deadline to file an application for rehearing, both of which the ACCA granted. (Docs. # 14-37, 14-38.) The second order extended the deadline to January 31, 2020, and stated that no further extensions would be allowed. (Doc. # 14-38.) Despite the ACCA's extensions of the deadline, Petitioner never filed an application for rehearing. Because the extended deadline for Petitioner to file for rehearing expired on January 21, 2020, the one-year clock was set to restart the next day, on January 22, 2020.

However, while Petitioner's first Rule 32 petition was still pending on appeal, he filed a second Rule 32 petition on October 23, 2019. (*See* Doc. # 14-40 at 7–29.) This second petition ultimately was denied as successive and without merit on August 26, 2022. *See State v. Williams*, CC-2016-000734.61 (Montgomery Cnty. Cir. Ct.), ECF No. 46. Starting August 29, 2022,[13] Petitioner had 42 days—or until October 10, 2022—to appeal the denial of his second petition to the ACCA.

[13] Petitioner's second Rule 32 petition was denied on Friday, August 26, 2022. *See State v. Williams*, CC-2016-000734.61 (Montgomery Cnty. Cir. Ct.), ECF No. 46. The 42-day window during which Petitioner could appeal did not begin until the following Monday—August 29, 2022. *See* Ala. R. App. P. 26(a).

Petitioner submitted a notice of appeal to the ACCA dated October 11, 2022, one day after the deadline expired. Ironically, the date of Petitioner's untimely appeal—October 11, 2022—is the date the one-year clock restarted.[14]

As for Petitioner's mandamus proceedings, particularly those that began on or about July 22, 2022, the Eleventh Circuit has not decided whether a properly filed state mandamus petition can toll the AEDPA limitation period. *See Brown v. Barrow*, 512 F.3d 1304, 1308 n.2 (11th Cir. 2008) (noting that "a properly filed state mandamus petition would probably toll the limitations period" but declining to address the issue). But persuasive authority in this Circuit indicates that "petitions for mandamus which do not seek 'post-conviction or other collateral review' of the judgment of conviction do not toll the [AEDPA limitation] period." *Thomas v. Tucker*, 2011 WL 7052582, at *1 (N.D. Fla. Dec. 7, 2011), *R&R adopted*, 2012 WL 136009 (N.D. Fla. Jan. 18, 2012). In *Thomas*, the federal habeas petitioner had filed a state habeas petition and a state mandamus petition seeking to compel his former appellate counsel to provide him with a copy of his direct-appeal record. *Id.* Looking to the plain language of 28 U.S.C. § 2244(d)(2), the district court concluded that those petitions did not toll the limitation period because "they were not

---

[14] Even if the limitation period were tolled during the pendency of Petitioner's untimely appeal, it does not make his federal habeas petition timely. The ACCA dismissed Petitioner's untimely appeal on December 15, 2022. (Doc. # 14-47.) In this scenario, the one-year clock would have restarted the next day, December 16, 2022, and the limitation period would have expired 69 days later, on February 23, 2023.

applications for 'collateral review with respect to the pertinent judgment'" and "[t]hey only sought discovery." *Id.* at *2; *see also Day v. Sec'y, Dep't of Corr.*, 2025 WL 1345541, at *4 (M.D. Fla. May 8, 2025) (state mandamus petition seeking to compel counsel to provide deposition transcripts did not toll the limitation period).

Petitioner's state mandamus petition, filed on or about July 22, 2022, requested documents; it did not seek "post-conviction or other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. § 2244(d)(2). Like the petitioners in *Thomas* and *Day*, Petitioner's mandamus petition is more akin to a discovery motion than an application for "post-conviction or other collateral review." *Cf. Brown v. Sec'y for Dep't of Corr.*, 530 F.3d 1335, 1338 (11th Cir. 2008) ("A discovery motion does not toll AEDPA because it does not challenge the conviction, but merely seeks material that might be of help in developing such challenge." (cleaned up)). In sum, Petitioner's July 2022 state mandamus petition did not statutorily toll the limitation period, and the clock restarted on October 11, 2022.

When the one-year clock restarted on October 11, 2022, 69 days remained, making the limitation period's expiration date December 19, 2022.[15] Petitioner's

[15] Respondents calculated an expiration date of March 4, 2023. (Doc. # 14 ¶ 16.) First, Respondents started the clock on November 2, 2017, rather than on November 1, 2017. *See supra* note 12. Respondents also list the filing dates of Petitioner's first and second Rule 32 petitions as "[o]n or about August 14, 2018" (Doc. # 14 ¶ 4) and "on or about October 16, 2019" (Doc. # 14 ¶ 7). *But see supra* notes 2 and 3 (explaining that these Rule 32 petitions do not receive the benefit of the prison mailbox rule because Petitioner did not answer question 18 on the standardized Rule

subsequent Rule 32 proceedings do not afford any additional statutory tolling. His third Rule 32 petition, filed on April 22, 2022, has no tolling effect because it was dismissed on August 9, 2022, before the disposition of Petitioner's second Rule 32 petition. His fourth, fifth, and sixth Rule 32 petitions provide no additional tolling because they were all filed after the one-year limitation period had expired. *See Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) (per curiam) ("A state-court petition . . . that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). Likewise, any mandamus proceedings initiated by Petitioner after the limitation period expired on December 19, 2022, cannot toll the period. *See, e.g.*, *Brown v. Barrow*, 512 F.3d 1304, 1307–08 & n.2 (11th Cir. 2008) (state mandamus petition filed after the AEDPA's one-year limitation period had expired did not toll the period).

Therefore, even accounting for statutory tolling, Petitioner's federal habeas petition still is untimely.

---

32 petition forms). Additionally, Respondents' calculations toll the limitation period during Petitioner's untimely appeal from the denial of his second Rule 32 petition. (Doc. # 14 ¶ 16); *see also supra* note 14 (accounting for a scenario in which the limitation period is tolled during Petitioner's untimely appeal). Any way you slice it, the instant federal habeas petition is, at minimum, three years too late. Notably, in his reply, Petitioner says he "does not dispute the arithmetic of Respondents' tolling calculation for the petitions it addresses" (*i.e.*, his first and second Rule 32 petitions). (Doc. # 16 at 11.)

**2. *Equitable Tolling***

Equitable tolling of § 2244(d)(1)'s one-year limitation period applies where a petitioner "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation and internal quotation marks omitted). Equitable tolling is "an extraordinary remedy" and, as such, is "limited to rare and exceptional circumstances and typically applied sparingly." *Thomas v. Att'y Gen.*, 992 F.3d 1162, 1179 (11th Cir. 2021) (citation omitted). "The petitioner bears the burden of showing that equitable tolling is warranted." *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) (per curiam).

In his reply, Petitioner argues that he is entitled to equitable tolling. (Doc. # 16 at 12–13.) Petitioner, however, has not met his burden of showing that he diligently pursued his rights with respect to the claim on which he now seeks federal habeas relief.

Petitioner's arguments for why he is entitled to equitable tolling are basically the same as his arguments for why the limitation period began to run pursuant to 28 U.S.C. § 2244(d)(1)(D) rather than § 2244(d)(1)(A). *See supra* Part IV.A. Petitioner claims that, prior to trial, he entered a guilty plea for the lesser-included offense of manslaughter and was sentenced based on that guilty plea but that he subsequently was tried for murder. If that were the case, the factual basis for the claim he now

raises would have been established the moment the trial commenced. But Petitioner did not raise this claim on direct appeal, nor did he raise it in any of his first five Rule 32 petitions. In fact, Petitioner did not even attempt to raise this claim in any state-court proceeding until his *sixth* Rule 32 petition, which he did not file until March 2025—over a year after the dismissal of his fifth Rule petition and more than two years after the AEDPA's one-year limitation period had expired. This inexplicable delay does not reflect a diligent pursuit of Petitioner's rights with respect to the claim at bar.

Petitioner's excuse for the delay is that he "did not have access to the November 30, 2016 transcript or a complete case action summary," but that is immaterial. He did not need that documentation to learn about a purported guilty-plea proceeding that he claims occurred. Furthermore, this court's independent review of the state-court record, available on Alacourt.com, turned up no indication that Petitioner entered into a plea agreement. "Charge 01 Disposed by: Guilty Plea on: 11/30/2016" was entered on the docket at 4:20:26 P.M. on December 1, 2016. "Charge 01 Disposed by: Convicted on: 11/30/2016" was entered less than one minute later, at 4:21:21 P.M. on December 1, 2016. Nothing in the record before the obviously erroneous entry regarding disposal of Petitioner's murder charge by "guilty plea" indicates the existence of any plea agreement or that Petitioner actually had entered a guilty plea on November 30, 2016. Prior to these docket entries, the

state-court record demonstrates that, on November 28, 2016, the day Petitioner's trial began, he, not the State, requested to continue the trial so he could secure a material witness, and the circuit court denied the motion. *State v. Williams*, CC-2016-000734.00 (Montgomery Cnty. Cir. Ct.), ECF Nos. 89, 90. On November 30, 2016, the jury returned a guilty verdict. (Doc. # 14-3.) That same date, the circuit court entered an order stating that Petitioner, "having been found GUILTY of Murder after trial by jury," was to be taken into custody by the Montgomery County Sheriff's Department where he would remain until his sentencing. *Williams*, CC-16-734.00, ECF No. 96. Petitioner thus has not demonstrated that he diligently pursued his rights, and his excuse for his delay is unavailing.

Petitioner also has not met his burden of showing that extraordinary circumstances prevented him from filing this 28 U.S.C. § 2254 petition on time. He simply states that his "extraordinary circumstance is Respondents' years-long refusal to produce the transcript and related records of the November 30, 2016 proceedings, despite his repeated requests, which prevented him from being able to substantiate a claim that depended on records solely within the State's custody." (Doc. # 16 at 12–13.) Even if Petitioner's equitable tolling argument had not already failed at the first element, his inability to obtain records is not the kind of "extraordinary circumstance" that would justify equitable tolling. And even if an inability to obtain records were an extraordinary circumstance, Petitioner would still

need to "show a causal connection between the alleged extraordinary circumstances and the late filing of the petition." *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011). Petitioner has not shown a connection between his purported inability to obtain state-court records and his failure to timely file his federal habeas petition.

In sum, Petitioner's arguments fail to explain why he filed his § 2254 petition more than three years late, and he has not met his burden of demonstrating a diligent pursuit of his rights or that extraordinary circumstances prevented his timely filing of his habeas petition so as to warrant equitable tolling.

### 3. *Fundamental Miscarriage of Justice: Actual Innocence*

Even where there is no basis for tolling, a petitioner can overcome § 2244(d)(1)'s one-year limitation period where he can show a "fundamental miscarriage of justice." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). The "fundamental miscarriage of justice" exception requires a showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* (citation omitted). "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, . . . or . . . expiration of the [AEDPA] statute of limitations." *Id.* at 386.

The actual innocence exception "is exceedingly narrow," *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1013 (11th Cir. 2012) (per curiam), and requires

a petitioner "(1) to present new reliable evidence that was not presented at trial, and (2) to show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence," *id.* at 1011 (cleaned up). Additionally, a petitioner must show "factual innocence, not mere legal insufficiency." *Johnson v. Fla. Dep't of Corr.*, 513 F.3d 1328, 1334 (11th Cir. 2008) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)); *accord McKay v. United States*, 657 F.3d 1190, 1197 (11th Cir. 2011).

Petitioner does not assert that he is actually innocent. However, in a section of his federal habeas petition titled, "Fundamental Miscarriage of Justice (Prejudice)," he argues that, but for his counsel's failure to object to his trial for murder after he supposedly had entered a guilty plea and the trial court's withholding of "critical" records (*e.g.*, the case action summary and "relevant plea documentation"), he "would only stand convicted of manslaughter." (Doc. # 1 at 6–7; *see also* Doc. # 16 at 10 (arguing the same).) Even though Petitioner titled that section "Fundamental Miscarriage of Justice," the allegations therein attempt to demonstrate that he could overcome any procedural default of his claim by showing cause and prejudice, not that a fundamental miscarriage of justice had occurred.[16]

[16] Even if Petitioner were trying to claim that he is actually innocent, his claim would fail. *See Rozzelle*, 672 F.3d at 1012. In *Rozzelle*, the federal habeas petitioner did not claim that he was actually innocent of the crime of homicide; rather, he claimed that he was "actually innocent of second-degree murder and guilty of only manslaughter." *Id.* Like the petitioner in *Rozzelle*, Petitioner does not argue that he did not commit a homicide; instead, he argues that he "would only stand convicted of manslaughter" if his counsel had objected to his murder trial commencing

Because Petitioner has not alleged or argued that a fundamental miscarriage of justice occurred (*i.e.*, that he is actually innocent), and because the parties' briefing does not cite anything in the state-court record to indicate that a fundamental miscarriage of justice occurred, Petitioner cannot overcome the expired one-year limitation period.

## C. Petitioner's Motion (Request) for an Evidentiary Hearing

In his reply, Petitioner argues that an evidentiary hearing should be held because

> [e]very fact stated [is] apart [sic] of the [t]rial court records and or exhibits placed in petitioner's 2024 Rule 32 [petition] which the State failed to include in [its] response exhibits and upon evidentiary hearing can and will be provided as proof thereof and must be provided a[s] a conclusory assertion of diligence to satisfy this standard.

(Doc. # 16 at 13 (emphasis omitted).) The U.S. Supreme Court has acknowledged that "[u]nder the [AEDPA], the standard to expand the state-court record is a stringent one." *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022). Under 28 U.S.C. § 2254(e)(2), if a federal habeas petitioner "has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim" unless the petitioner can make two showings. § 2254(e)(2)(A). First, the petitioner must show that the claim relies on either "a new rule of constitutional law,

---

after he had allegedly entered into a plea agreement to the lesser charge of manslaughter. (Doc. # 1 at 6–7; Doc. # 16 at 10.) Under *Rozzelle*, this is not a cognizable claim of actual innocence.

made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," § 2254(e)(2)(A)(i), or "a factual predicate that could not have been previously discovered through the exercise of due diligence," § 2254(e)(2)(A)(ii). If the petitioner can satisfy § 2254(e)(2)(A), then he must show that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the [petitioner] guilty of the underlying offense." § 2254(e)(2)(B). "In all but . . . extraordinary cases, AEDPA 'bars evidentiary hearings in federal habeas proceedings initiated by state prisoners.'" *Shinn*, 596 U.S. at 371 (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013)).

Petitioner's arguments for why an evidentiary hearing should be held are substantially similar to his arguments for why the one-year limitation period began to run based on 28 U.S.C. § 2244(d)(1)(D) rather than § 2244(d)(1)(A), *see supra* IV.A, and his arguments for why he is entitled to equitable tolling, *see supra* Part IV.B.2. Despite Petitioner's contentions to the contrary, the double jeopardy claim he now presents in his federal habeas petition does not rely on "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)(A)(ii).

Petitioner is correct that § 2254(e)(2) "does not bar a[n] [evidentiary] hearing where the petitioner was not at fault for developing the facts." (Doc. # 16 at 14.)

But Petitioner was at fault here. He could have, and should have, discovered the factual predicate underlying his claim as soon as his murder trial commenced following his alleged guilty-plea proceeding. Based on Petitioner's own assertions, the factual predicate was apparent nearly a decade ago, on November 30, 2016. Because Petitioner failed to develop the factual basis for his federal habeas claim during his state postconviction proceedings, § 2254(e)(2) bars an evidentiary hearing. That failure is attributable to Petitioner, not to the State's purported refusal to provide him a transcript and case action summary.

Petitioner's case is not extraordinary and provides no basis to depart from the AEDPA's general rule. *See Shinn*, 596 U.S. at 371. Because Petitioner has not satisfied the first prong of 28 U.S.C. § 2254(e)(2), he is barred from obtaining an evidentiary hearing.

## V. CONCLUSION

Petitioner did not file this 28 U.S.C. § 2254 petition for a writ of habeas corpus within the AEDPA's one-year limitation period, *see* 28 U.S.C. § 2244(d)(1), and he has not demonstrated that statutory tolling renders the petition timely, that equitable tolling applies, or that the fundamental-miscarriage-of-justice exception excuses the untimeliness. Therefore, the petition must be dismissed with prejudice.

A prisoner seeking a writ of habeas corpus does not have an automatic right to appeal a district court's denial of the petition. *See* 28 U.S.C. § 2253(c)(1).

Pursuant to Rule 11(a) of the *Rules Governing Section 2254 Cases in the United States District Courts*, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Petitioner has not shown "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see* § 2253(c). Therefore, Petitioner will be denied a certificate of appealability.

Based on the foregoing, it is ORDERED that

(1) Petitioner Lamont James Williams's 28 U.S.C. § 2254 petition is DISMISSED with prejudice;

(2) Petitioner is DENIED a certificate of appealability; and

(3) Petitioner's Motion (Request) for an Evidentiary Hearing (Doc. # 16 at 14–15) is DENIED.

It is further ORDERED that Petitioner's "Motion for Order to the Clerk of Court for the Middle District of Alabama," in which Petitioner requests that his name be corrected on the electronic docket sheet (Doc. # 17), is GRANTED. The Clerk of Court is DIRECTED to update the electronic docket sheet, substituting Lamont James Williams in place of LaMont James Williams.

Final judgment will be entered separately.

DONE this 26th day of October, 2026.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE